**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | HON. TONIANNE J. BONGIOVANNI |
| | : | |
| v. | : | 26-mj-3048 (TJB) |
| | : | |
| WENDIS RODRIGUEZ | : | **CRIMINAL COMPLAINT** |
| | : | |

I, Stephen A. Rabena, being duly sworn, state the following is true and correct to the best of my knowledge and belief:

**SEE ATTACHMENT A**

I further state that I am a Special Agent with the Federal Bureau of Investigation, and that this complaint is based on the following facts:

**SEE ATTACHMENT B**

continued on the attached pages and made a part hereof.

*/s/ Stephen A. Rabena*
Stephen A. Rabena
Special Agent
Federal Bureau of Investigation

Attested to by telephone pursuant
to Fed. R. Crim. P. 4.1(b)(2)(A) on
September 17, 2026
in Trenton, New Jersey

Hon. Tonianne J. Bongiovanni
United States Magistrate Judge

# ATTACHMENT A

## Count One
## (Unlawful Possession of a Firearm by a Convicted Felon)

On or about June 30, 2026, in Mercer County, in the District of New Jersey, and elsewhere, the defendant,

**WENDIS RODRIGUEZ**,

knowing that he had previously been convicted of a crime punishable by imprisonment for a term exceeding one year, did knowingly possess a firearm, namely, one Intratec TEC-DC9 9mm semi-automatic pistol, bearing serial number D063932, and the firearm was in and affecting interstate and foreign commerce.

In violation of Title 18, United States Code, Section 922(g)(1).

**Count Two**
**(Distribution of and Possession with Intent to Distribute Fentanyl)**

On or about July 7, 2026, in Mercer County, in the District of New Jersey, and elsewhere, the defendant,

**WENDIS RODRIGUEZ**,

did knowingly and intentionally distribute, and possess with intent to distribute, 40 grams or more of a mixture and substance containing a detectable amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide (“fentanyl”), a Schedule II controlled substance.

In violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(B).

**Count Three**
**(Distribution of and Possession with Intent to Distribute Fentanyl)**

On or about August 27, 2026, in Mercer County, in the District of New Jersey, and elsewhere, the defendant,

**WENDIS RODRIGUEZ**,

did knowingly and intentionally distribute, and possess with intent to distribute, 400 grams or more of a mixture and substance containing a detectable amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide ("fentanyl"), a Schedule II controlled substance.

In violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(A).

**ATTACHMENT B**

I, Stephen A. Rabena, am a Special Agent with the Federal Bureau of Investigation ("FBI"). I am fully familiar with the facts set forth herein based on my own investigation, my conversations with other law enforcement officers, and my review of reports, documents, and items of evidence. Because this Affidavit is being submitted for a limited purpose, I have not set forth every fact that I know concerning this investigation. Where the contents of documents and the actions and statements of others are reported herein, they are reported in substance and in part, except where otherwise indicated. Where I assert that an event took place on a particular date, I am asserting that it took place on or about the date alleged.

1. Federal law enforcement, including the FBI, has been investigating Wendis Rodriguez ("Rodriguez") for the suspected commission of, *inter alia*, unlawful drug-trafficking and firearm possession in Mercer County, New Jersey.

**June 9, 2026 Transaction**

2. On or about June 9, 2026, law enforcement conducted an audio-recorded controlled purchase of suspected heroin containing fentanyl ("heroin/fentanyl") from Rodriguez utilizing a confidential human source ("CHS"), who was working at the direction of law enforcement, in Lawrence Township, New Jersey.

3. Prior to CHS's meeting with Rodriguez, law enforcement searched CHS for contraband, currency, and weapons, which yielded negative results. Law enforcement provided CHS with a device with audio recording capabilities and funds to complete the purchase.

4. Rodriguez met CHS at the location at which the deal was to occur in Lawrence Township. Upon CHS's and Rodriguez's arrival at the deal location, CHS entered Rodriguez's vehicle, in which Rodriguez sold one brick[1] of suspected heroin/fentanyl for $60. Thereafter, CHS departed the area and provided law enforcement with the suspected heroin/fentanyl. The transaction in Rodriguez's vehicle was captured on the provided audio recording device.

5. Laboratory testing by the Drug Enforcement Administration ("DEA") confirmed that the suspected narcotics sold by Rodriguez on or about June 9, 2026 contained fentanyl and weighed approximately 1.766 grams.

---

[1] A "brick" is typically comprised of approximately 50 smaller, individually packaged glassine envelopes or baggies containing heroin and/or fentanyl, which are bundled together, wrapped, and taped to form a small package.

**June 30, 2026 Transaction**

6. On or about June 30, 2026, law enforcement conducted another audio-recorded controlled purchase of suspected heroin/fentanyl, along with a firearm, from Rodriguez in Lawrence Township.

7. Prior to CHS's meeting with Rodriguez, law enforcement searched CHS for contraband, currency, and weapons, which yielded negative results. Law enforcement provided CHS with a device with audio recording capabilities and funds to complete the purchase.

8. Before the transaction, Rodriguez agreed to sell 50 grams of "raw" heroin/fentanyl, at a rate of $35 per gram, and a "Tec 9" firearm, for $1,000, to CHS in Lawrence Township. Upon CHS's and Rodriguez's arrival at the deal location, CHS entered Rodriguez's vehicle, in which the deal occurred. Inside the vehicle, Rodriguez sold a clear plastic baggie containing suspected heroin/fentanyl and an Intratec TEC-DC9 9mm semi-automatic pistol, bearing serial number D063932 ("Firearm-1"), containing a large capacity magazine loaded with 16 rounds of 9mm ammunition, to CHS for a total of $2,750. Thereafter, CHS exited Rodriguez's vehicle, departed the area, and provided law enforcement with the suspected heroin/fentanyl, Firearm-1, and ammunition. The transaction in Rodriguez's vehicle was captured on the provided audio recording device.

9. Law enforcement has confirmed that Firearm-1 meets the definition of a firearm as defined by 18 U.S.C. § 921(a)(3), and that Firearm-1 was manufactured outside the State of New Jersey and thus traveled in interstate commerce prior to Rodriguez having possession of it in New Jersey on or about June 30, 2026.

10. Laboratory testing by the DEA confirmed that the suspected narcotics sold by Rodriguez on or about June 30, 2026 contained fentanyl and weighed approximately 49.2 grams.

**July 7, 2026 Transaction**

11. On or about July 7, 2026, law enforcement conducted another audio-recorded controlled purchase of suspected heroin/fentanyl from Rodriguez in Lawrence Township.

12. Prior to CHS's meeting with Rodriguez, law enforcement searched CHS for contraband, currency, and weapons, which yielded negative results. Law enforcement provided CHS with a device with audio recording capabilities and funds to complete the purchase.

13. Before the transaction, Rodriguez agreed to sell 100 grams of "raw" heroin/fentanyl to CHS in Lawrence Township. Upon CHS's and Rodriguez's

arrival at the deal location, Rodriguez sold a clear plastic baggie containing suspected heroin/fentanyl to CHS for $3,500. During the deal, Rodriguez claimed that he gave CHS an extra five grams of heroin/fentanyl. Thereafter, CHS and Rodriguez went separate ways and CHS provided law enforcement with the suspected heroin/fentanyl. The transaction was captured on the provided audio recording device.

14. Laboratory testing by the DEA confirmed that the suspected narcotics sold by Rodriguez on or about July 7, 2026 contained fentanyl and weighed approximately 104.7 grams.

**July 13, 2026 Transaction**

15. On or about July 13, 2026, law enforcement conducted another audio-recorded controlled purchase of suspected heroin/fentanyl from Rodriguez in Lawrence Township.

16. Prior to CHS's meeting with Rodriguez, law enforcement searched CHS for contraband, currency, and weapons, which yielded negative results. Law enforcement provided CHS with a device with audio recording capabilities and funds to complete the purchase.

17. Before the transaction, Rodriguez agreed to sell 50 grams of "raw" heroin/fentanyl to CHS in Lawrence Township. Upon CHS's and Rodriguez's arrival at the deal location, CHS entered Rodriguez's vehicle, in which Rodriguez sold a clear plastic baggie containing suspected heroin/fentanyl to CHS for $1,750.

18. Thereafter, CHS exited Rodriguez's vehicle, departed the area, and provided law enforcement with the suspected heroin/fentanyl. The transaction in Rodriguez's vehicle was captured on the provided audio recording device.

19. Laboratory testing by the DEA confirmed that the suspected narcotics sold by Rodriguez on or about July 13, 2026 contained fentanyl and weighed approximately 51.3 grams.

**July 29, 2026 Transaction**

20. On or about July 29, 2026, law enforcement conducted another audio-recorded controlled purchase of suspected heroin/fentanyl from Rodriguez in Lawrence Township.

21. Prior to CHS's meeting with Rodriguez, law enforcement searched CHS for contraband, currency, and weapons, which yielded negative results. Law enforcement provided CHS with a device with audio recording capabilities and funds to complete the purchase.

22. Before the transaction, Rodriguez agreed to sell 100 grams of heroin/fentanyl to CHS in Lawrence Township. Upon CHS's and Rodriguez's arrival at the deal location, CHS entered Rodriguez's vehicle and provided Rodriguez with $4,000. In response, Rodriguez provided CHS with two clear packages, stated that each package was 50 grams, and explained that CHS had to mix substance from each package to make the mixture that CHS had previously purchased from him. Rodriguez explained that the clear baggie containing a powdery substance was a baby laxative and the hard substance in a separate bag was the "work" and "fetty."[2]

23. Thereafter, CHS exited Rodriguez's vehicle, departed the area, and provided law enforcement with the suspected heroin/fentanyl. The transaction in Rodriguez's vehicle was captured on the provided audio recording device.

24. Laboratory testing by the DEA confirmed that the suspected narcotics sold by Rodriguez on or about July 29, 2026 contained fentanyl and weighed approximately 49.9 grams.

**August 11, 2026 Transaction**

25. On or about August 11, 2026, law enforcement conducted another audio-recorded controlled purchase of suspected heroin/fentanyl, along with a firearm, from Rodriguez in Lawrence Township.

26. Prior to CHS's meeting with Rodriguez, law enforcement searched CHS for contraband and weapons, which yielded negative results. Law enforcement permitted CHS to possess $20 of CHS's personal money to purchase food. Law enforcement provided CHS with a device with audio recording capabilities and funds to complete the purchase.

27. Before the transaction, CHS requested to buy 50 grams of heroin/fentanyl and a firearm from Rodriguez. Upon CHS's and Rodriguez's arrival at the deal location, CHS entered Rodriguez's vehicle, in which the deals occurred. Inside the vehicle, Rodriguez sold a clear plastic baggie containing approximately 50 grams of suspected heroin/fentanyl to CHS for $2,000. CHS informed Rodriguez that he possessed another $2,000 to buy a firearm. Rodriguez told CHS that he had to go drive somewhere to get a firearm for CHS but would return shortly. CHS then exited Rodriguez's vehicle, upon which Rodriguez drove away. Shortly thereafter, Rodriguez returned in the vehicle, upon which CHS reentered the vehicle. Thereafter, inside Rodriguez's vehicle, Rodriguez sold a Glock 17 semi-automatic 9mm handgun, bearing serial number BSHL562 ("Firearm-2"), along with 11 rounds of 9mm ammunition, to CHS for $2,000.

---

[2] "Fetty" is a common slang term referring to fentanyl.

28. Thereafter, CHS exited Rodriguez's vehicle, departed the area, and provided law enforcement with the suspected heroin/fentanyl, Firearm-2, and ammunition. The transactions in Rodriguez's vehicle were captured on the provided audio recording device.

29. Law enforcement has confirmed that Firearm-2 meets the definition of a firearm as defined by 18 U.S.C. § 921(a)(3), and that Firearm-2 was manufactured outside the State of New Jersey and thus traveled in interstate commerce prior to Rodriguez having possession of it in New Jersey on or about August 11, 2026.

30. Laboratory testing by the DEA confirmed that the suspected narcotics sold by Rodriguez on or about August 11, 2026 contained fentanyl and weighed approximately 51.444 grams.

**August 27, 2026 Transaction**

31. On or about August 27, 2026, law enforcement conducted another audio-recorded controlled purchase of suspected heroin/fentanyl from Rodriguez in Lawrence Township.

32. Prior to CHS's meeting with Rodriguez, law enforcement searched CHS for contraband, currency, and weapons, which yielded negative results. Law enforcement provided CHS with two devices with audio recording capabilities and funds to complete the purchase.

33. Before the transaction, Rodriguez offered to sell to CHS a half kilo (*i.e.*, 500 grams) of heroin/fentanyl and uncut cocaine and CHS ultimately ordered the half kilo of heroin/fentanyl. Upon CHS's and Rodriguez's arrival at the deal location in Lawrence Township, CHS entered Rodriguez's vehicle through the front passenger side. Seated in the rear passenger compartment of the vehicle was another individual who had arrived with Rodriguez ("Coconspirator-1"). While inside the vehicle, CHS provided Rodriguez with $18,500 and Coconspirator-1 handed CHS a black plastic bag. Rodriguez explained to CHS that the bag contained the heroin/fentanyl that CHS ordered.

34. Thereafter, CHS exited Rodriguez's vehicle with the black plastic bag, departed the area, and provided law enforcement with the suspected heroin/fentanyl. The transaction in Rodriguez's vehicle was captured on the provided audio recording devices.

35. Law enforcement field-tested the suspected narcotics sold by Rodriguez on or about August 27, 2026, which detected the presence of fentanyl.[3]

[3] Laboratory testing results from the DEA remain pending.

36. Based on my training, experience, and observations, including during this investigation, I have probable cause to believe that the narcotics sold by Rodriguez on or about August 27, 2026 included 400 grams or more of a mixture and substance containing fentanyl.

**Rodriguez's Prior Felony Convictions**

37. On or about July 28, 2010, Rodriguez pled guilty in the Superior Court of New Jersey, Middlesex County, of possession of a controlled dangerous substance, in violation of N.J.S.A. 2C:35-10(a)(1), a crime punishable by a term of imprisonment exceeding one year. For this conviction, on or about October 22, 2010, Rodriguez was initially sentenced to a non-custodial term of imprisonment and three years of probation. On or about January 9, 2012, Rodriguez's probation was revoked and he was re-sentenced to three years' imprisonment.

38. On or about July 29, 2010, Rodriguez pled guilty in the Superior Court of New Jersey, Middlesex County, of distribution of a controlled dangerous substance near school property, in violation of N.J.S.A. 2C:35-7, a crime punishable by a term of imprisonment exceeding one year. For this conviction, on or about October 22, 2010, Rodriguez was initially sentenced to a non-custodial term of imprisonment and three years of probation. On or about January 9, 2012, Rodriguez's probation was revoked and he was re-sentenced to three years' imprisonment.

39. On or about October 19, 2011, Rodriguez pled guilty in the Superior Court of New Jersey, Middlesex County, of receiving stolen property, in violation of N.J.S.A. 2C:20-7, a crime punishable by a term of imprisonment exceeding one year. For this conviction, on or about January 9, 2012, Rodriguez was sentenced to five years' imprisonment.

40. On or about February 11, 2016, Rodriguez pled guilty in the Superior Court of New Jersey, Middlesex County, of conspiracy to manufacture, distribute or dispense a controlled dangerous substance, in violation of 2C:35-5(a)(1) and 2C:5-2, a crime punishable by a term of imprisonment exceeding one year. For this conviction, on or about May 9, 2016, Rodriguez was sentenced to three years' imprisonment.

41. On or about May 9, 2016, Rodriguez pled guilty in the Superior Court of New Jersey, Middlesex County, of manufacturing, distributing, or dispensing a controlled dangerous substance, in violation of 2C:35-5(b)(3), a crime punishable by a term of imprisonment exceeding one year. For this conviction, on or about May 9, 2016, Rodriguez was sentenced to three years' imprisonment.